THE HONORABLE DAVID ESTUDILLO

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

vs.

JONATHAN GENTRY,

Defendant.

NO. CR24-5265 - DGE

DEFENDANT GENTRY'S SENTENCING MEMORANDUM

**INTRODUCTION**

Jonathan Gentry asks this court to sentence him to serve no further time incarcerated; i.e. credit for time served, followed by a lengthy term of supervised release. This sentencing option recognizes Mr. Gentry's insistence on the victims avoiding the rigors of anticipating, testifying, and recovering from trial. It also recognizes the extreme lapse in time from the pleaded conduct, a time when Mr. Gentry has optimized his life and time when the accusers waited to report. It further recognizes the time when Mr. Gentry has shown his sincerity for rehabilitation.

The defense anticipates the government will join US Probation in its recommendation for a 30-year sentence. However, upon the court's careful sentencing assessment,



HESTER LAW GROUP, INC., P.S.
1008 SOUTH YAKIMA AVENUE, SUITE 302
TACOMA, WASHINGTON 98405
(253) 272-2157

particularly under the 18 USC § 3553 factors, a sentence like that proposed by the defense is sufficient and no more than is necessary to achieve the sentencing objectives of this Court.

The Court's sentencing relates to Mr. Gentry's previously entered guilty pleas to two counts of Abusive Sexual Contact with a Minor, violations of Title 18, United States Code, Sections 2244(a)(5), 2246(3), and one count of Sexual Abuse of a Minor, a violation of Title 18, United States Code, Sections 2243(a), 2246(2)(C) and (D), and 7.

Mr. Gentry is prepared for sentencing.

## OFFENSE CONDUCT

As noted, the conduct related to this case was the subject of the Plea Agreement. Mr. Gentry informed the Court of his acceptance of the Statement of Facts at the time he entered his guilty plea. He has provided a statement to the court as well, *See Exhibit 1*

## BACKGROUND INFORMATION

### Preparation for Sentencing

Mr. Gentry has reviewed all of the case discovery. He reviewed and agreed to the Plea Agreement. He has provided mitigation information during Probation's interview for the PSR and has provided more detail to the defense in anticipation of sentencing. He has also engaged in the PSR interview, reviewed all objections and the final PSR and recommendation by Probation. He has provided the defense with a written statement accepting responsibility, which is incorporated herein. Mr. Gentry's safety is well established and has been addressed as well.

Among the defense arguments, below, is reference to the fact that justice has been a far cry from speedy. The current Jonathan Gentry is a much different man today than the previous version of him during his early twenties. The court is in the rare advantageous



HESTER LAW GROUP, INC., P.S.
1008 SOUTH YAKIMA AVENUE, SUITE 302
TACOMA, WASHINGTON 98405
(253) 272-2157

position of knowing the short sentence the defense requests is a safe and viable solution toward justice in this case.

## SENTENCING RECOMMENDATION BY DEFENDANT

The defense recommends the Court sentence Mr. Gentry a term of confinement that is limited to the time he has already served upon his arrest in this case. Recognizing that defendants are not entitled to credit for home confinement, in addition to the time Mr. Gentry spent in jail when arrested for his charges, he has also been ordered confined to his home since his release – without incident, and with full compliance. This lack of liberty is asked to be considered as well.

In addition to the Sentencing Guidelines, the defense asks the Court to consider the later section of this memorandum related to 18 USC § 3553(a) factors.

### Guidelines Calculation

The defense proposes the following calculations:

| | |
|---|---|
| Counts 1-3:<br>Base Level<br>(stipulated in plea agreement) | 38 |
| Adjustments per Plea Agreement<br>(stipulated in plea agreement; USSG § 2A3.4(b)(3) and §3D1.4) | +5 |
| Count 4:<br>Base Level | 18 |
| Adjustments<br>(stipulated in plea agreement; USSG § 2A3.2(b)(1)) | +4 |
| Acceptance of Responsibility<br>(3E1.1(a)and (b)) | -3 |
| Count 4 – is disregarded for determining combined offense level | |
| **Total Offense Level** | **43** |



HESTER LAW GROUP, INC., P.S.
1008 SOUTH YAKIMA AVENUE, SUITE 302
TACOMA, WASHINGTON 98405
(253) 272-2157

**Criminal History Category**

Mr. Gentry agrees his Criminal History Category is II .

The defense Guidelines Calculation results in a Guidelines Provision of Life.

**Plea Agreement Summary**

The government agreed to recommend no more than 360 months. The defense may recommend any sentence, including a sentence of credit for time served.

**Departure from the Guidelines Range**

Guidelines Policy 5H1.1, per Amendment 829, addresses that age may be relevant in determining whether a departure is warranted. In fact, given Mr. Gentry's youthfulness at the time of his offense conduct from well over a decade ago, the Court should weigh heavily his age while crafting his sentence.

**Deviation from Guidelines Range**

As this Court is well-aware, sentencing courts are free to disagree with the Guidelines' recommended sentence in any case and may impose a different sentence based on a contrary view of what is appropriate under § 3553(a).

**THE COURT SHOULD SENTENCE MR. GENTRY TO SERVE NO FURTHER TIME INCARCERATED**

A time-served sentence satisfies the 18 USC § 3553(a) factors and is appropriate for this case. A sentence of this duration considers Mr. Gentry's offense conduct, punishes him sufficiently, facilitates the opportunity to return him to a position in society, and prove himself a responsible citizen to this Court.



HESTER LAW GROUP, INC., P.S.
1008 SOUTH YAKIMA AVENUE, SUITE 302
TACOMA, WASHINGTON 98405
(253) 272-2157

The statutory factors are set forth within 18 U.S.C. § 3553(a) and are considered in order, below:

> (a) Factors to be Considered in Imposing a Sentence.
>
> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

The defense recommendation is sound upon consideration the § 3553(a) factors, as follow:

*A. The Nature & Circumstances of the Offense and the History and Characteristics of the Defendant.*



HESTER LAW GROUP, INC., P.S.
1008 SOUTH YAKIMA AVENUE, SUITE 302
TACOMA, WASHINGTON 98405
(253) 272-2157

While much has been said in the PSR and the government's sentencing brief about the victim impact, and a bit about Mr. Gentry's background, there is much more to add while addressing Mr. Gentry's mitigating factors.

Offense

The nature and circumstances of the offenses involved in this case are indeed unpleasant. Included, and nearly unstated, is the fact that Mr. Gentry has given up Constitutional rights in an effort to allow the victims to avoid the stress, rigors, and aftermath of testifying during a trial. The court knows as well as any of the parties both the size of the sacrifice this is for Mr. Gentry and the benefit to the victims. The victims have had the advantage of proceeding through a process in which they are inaccessible to the defense for testing the veracity and accuracy of their testimony, as pre-trial interviewing is not available as a right, and they have been spared trial cross examination.

History and Characteristics of Mr. Gentry

*Introduction*

Mr. Gentry is 36. He was only somewhere between 22 and 24 at the time of the offense conduct. He pleaded guilty in military court in 2013 for conduct that all was carried out during the same time period as the conduct in this case.

Jonathan Gentry was raised by devout, hardworking, quiet and undemonstrative parents who insisted on respect and hard work from their son. Jonathan was taught to do things right the first time, to accept adversity without argument, to push through discomfort and carry on with what was expected. Jonathan has always been honorable. Family, friends and an employer report that Jonathan would not fight back even when blamed for something he didn't do.



HESTER LAW GROUP, INC., P.S.
1008 SOUTH YAKIMA AVENUE, SUITE 302
TACOMA, WASHINGTON 98405
(253) 272-2157

Jonathan led a protected life; rarely dated through high school. He had never had sex, never used alcohol or drugs and had no criminal history, when at the age of 18 through on-line gaming he met Sarah Cuestas. Sarah is five years older than Jonathan. She had four children by multiple relationships with other men prior to meeting Jonathan. She has criminal history of theft. Jonathan moved to Arizona where he had his first sexual experience with Sarah who was worldly and encouraged Jonathon to use alcohol.

Jonathan was young and idealistic when he married Sarah. He joined the Army so he could provide for his new family financially with housing and medical coverage. Sarah and Jonathan had a daughter in 2010.

Jonathan was deployed to both Iraq and Afghanistan where he was exposed to dangerous and stressful conditions now widely recognized as cause for Post Traumatic Stress. In between deployments Jonathan was sent for training. Each time Jonathan was gone, friends observed that Sarah appeared to be cheating on Jonathan who served honorably and was recognized for his good work.

Each time Jonathan returned to their Washington Army base home, Jonathan discovered Sarah had let the house become filthy and unsafe. Child Protective Services (CPS) contacted Sarah over the home conditions and her children's well-being. Sarah was distant and unwelcoming to Jonathan who became severely depressed and began drinking heavily with Sarah's encouragement. Jonathan's drinking frequently resulted in black outs. Much of the time period for which Jonathan is charged is hazy for Jonathan who felt confused by Sarah's treatment, her encouragement of his drinking and constant pressure.

Sarah abused alcohol and drugs. She consistently exposed her children to adverse childhood experiences (ACES). She was contacted multiple times by Child Protective



HESTER LAW GROUP, INC., P.S.
1008 SOUTH YAKIMA AVENUE, SUITE 302
TACOMA, WASHINGTON 98405
(253) 272-2157

Services (CPS) for filthy unsafe living conditions and her children ultimately removed from her care.

Jonathan has never shirked responsibility. When he learned of allegations by Sarah's oldest daughter, he sought counseling. Per family, friends and employers when faced with an accusation, Jonathan always concedes. Even though the accusations against Jonathan were completely out of character, because of his blackouts and hazy memory, and rather than put his family through an ordeal, Jonathan pled guilty believing it was the right thing to do to protect his family.

Jonathan was incarcerated for over two years while Sarah benefited from the support of the government because of Jonathan's service in the Army. She was receiving that support when she sent her children to live with Jonathan's mother to whom she maintained she wanted to reconcile with Jonathan after he was released from custody.

Even after his release from custody Jonathan's mother in California continued to care for the children off and on. Nearly seven years passed since Jonathan's conviction for which he served two years of incarceration and for which he has been labeled as a registered sex offender. Jonathan has struggled to rebuild his life, to find work that would accept his conviction and to even find a church he could attend. Jonathan has worked to overcome his drinking problem and has continued with counseling. He has shown sincerity in wanting to improve himself. He has been successful in his work. Coworkers and employers think highly of him.

Just when he was feeling life was manageable, on 5/1/20 Sarah reported that two others of her children remember they also were victims. People closest to Jonathan have



HESTER LAW GROUP, INC., P.S.
1008 SOUTH YAKIMA AVENUE, SUITE 302
TACOMA, WASHINGTON 98405
(253) 272-2157

observed that he's remained honorable despite his circumstances. They have written letters of support which will be promptly filed in support of Mr. Gentry's sentencing.

*Early Married Life*

After his move to Arizona, and unsuccessfully entering the workforce, Jonathan had turned twenty and joined the Army. He felt it was the best way to care for his new family. He was in the 23rd Infantry Regiment, 4th Stryker Brigade Combat Team. He went through basic training in Ft Sills then was stationed at Joint Base Lewis -McCord in Washington state and got on base housing.

On 12/22/09 Jonathan and Sarah were married. On 4/1/2010 Jonathan's daughter Juliet was born.

*Deployments / Exposure to Extreme Stress*

During Jonathan's Army service he was deployed to both Afghanistan and Iraq. In addition to the imminent dangers of war with frequent rocket and small arms fire there were additional less conspicuous stressors and dangers.

Prior to deployments overseas, service men receive vaccinations to protect them from variety of diseases to which he could be exposed. They include anthrax, rabies, typhoid, malaria, Japanese Encephalitis, yellow fever, meningitis, hepatitis, smallpox, and influenza. All vaccines carry side effects some cumulative.

According to the Army, Jonathan served in designated imminent danger pay areas in Iraq 3/10/2010 and in Afghanistan from 11/18/12 through 6/16/13.

Jonathan received campaign medals and stars, an achievement medal and an army good conduct medal, a national defense medal, a Global war on Terrorism Service medal and an overseas service ribbon noted to be his second award, and a Nato medal for his service.



HESTER LAW GROUP, INC., P.S.
1008 SOUTH YAKIMA AVENUE, SUITE 302
TACOMA, WASHINGTON 98405
(253) 272-2157

Because of Jonathan's service in the Army, Sarah and her children were provided a home on Joint Base Lewis McCord in Washington State and were receiving all the benefits including financial and medical care to which families of service men are entitled.

*CPS Referrals RE: Sarah*

CPS contacts include a 2010 referral regarding a daughter who had a history of grand mal seizures and had been without her medication. Sarah had never picked up the medication and also failed to make a neurology appointment for the child. Another CPS Intake notes hazardous-, unclean living environment where needles and pills were found and accessible to children.

On 6/16/13 Jonathan returned from deployment to find his home again in a terrible state. Sarah was not welcoming to Jonathan who had learned of the possibility that he'd be sent to Texas which would mean a move for the family, and neither Sarah nor the oldest wanted to move.

*Depression/ Heavy Drinking/ Blackouts*

Jonathan recalls that period of his life just after coming back from deployment. He was depressed and suicidal. He considered ways he could die so the life insurance would still be in effect to take care of his wife and family. He drank even more heavily frequently to the point of blacking out. Sarah encouraged his drinking and bought him a flask so he could carry liquor with him to work. Jonathan never sought help for what probably was PTSD from his combat experience and made worse by his home life.

*Jonathan pleads guilty in military court*

When Jonathan was told of the accusations he didn't fight. Knowing he'd had frequent blackout periods, Jonathan decided rather than put his family through trauma he



HESTER LAW GROUP, INC., P.S.
1008 SOUTH YAKIMA AVENUE, SUITE 302
TACOMA, WASHINGTON 98405
(253) 272-2157

would plead guilty. He did not want to be dishonorable and say anything against his wife or his stepdaughter.

Sarah, who was being supported by the Army, sent her children to stay with Elvia in California and told Elvia that she wanted to reconcile with Jonathan.

*Jonathan takes responsibility*

Jonathan immediately sought counseling and treatment for alcohol abuse. He met ten times with Jose Vasquez Ph. D Psy. D who wrote in a letter that Jonathan was experiencing Adjustment Disorder with depression and, that "… Jonathan expressed that what he was going through was a failure on his part, that he took responsibility for his actions and was remorseful." Vasquez, who is a Sex offender treatment provider, wrote another letter on stating remorse, was important and that Jonathon could benefit from treatment." Vasquez stated that "Jonathan's participation in therapy and compliance with treatment shows a commitment to and love for himself and his family is exceptional" and these things would indicate he was not a risk to others.

Between 8/13/13 and October 2013 Jonathan completed alcohol abstinence treatment, a 16-hour Family Anger Control training, a new parent support program and a course on the impact of divorce on children.

*Youthfulness*

Jonathan was innocent and inexperienced and just eighteen when he "met" Sarah Cuestas during online gaming. Jonathan was also gullible. Naivety along with immaturity can lead to poor decisions and bad relationships. Sarah who was five years older had four children by other men. She introduced Jonathan to alcohol and encouraged him to use it.



HESTER LAW GROUP, INC., P.S.
1008 SOUTH YAKIMA AVENUE, SUITE 302
TACOMA, WASHINGTON 98405
(253) 272-2157

• As the court is well aware, scientific research that has been acknowledged by the court shows that starting in puberty, the brain is reshaped. Connection between Neurons (gray matter) and synapses (junctions between neurons) multiply in the cerebral cortex and change throughout adolescence. Among the last connections to be fully established are the links between the prefrontal cortex, seat of judgment and problem-solving, and the emotional centers in the limbic system, especially the amygdala. These links are critical for emotional learning and high-level self-regulation. These connections are not fully completed until the mid-twenties.

• Exposure to even mild uncontrollable stress impairs the cognitive functioning of the prefrontal cortex, a brain region critical for insight judgment and the inhibition of inappropriate behaviors." (Arnsten 2004).

Jonathan was naïve and immature when he met his wife Sarah who introduced him sex and alcohol. Jonathan had been exposed to severe stress in combat. After returning home from deployment he learned that Sarah had cheated on him and had failed to care for their home and the children through Jonathan's service. Jonathan suffered uncontrollable stress and depression. His reaction was to drink more heavily to the point of blackouts. He was just twenty-four years old when he was court martialed, plead guilty, was sentenced, and lost all he'd worked so hard for.

*B. The Seriousness of the Offense, the Need to Promote Respect for the Law and the Need to Provide Just Punishment.*

Mr. Gentry understands the offenses for which he has accepted responsibility are serious. He also understands the rigor of prison punishment from his time behind bars following his court martial.



HESTER LAW GROUP, INC., P.S.
1008 SOUTH YAKIMA AVENUE, SUITE 302
TACOMA, WASHINGTON 98405
(253) 272-2157

In fact, Mr. Gentry has already proved his respect for the law by moving forward with an honorable life, a life without further criminality, and a life of obedience to probationary matters, work matters, alcohol abstention, and now, complete compliance with the pre-trial conditions required of him.

Given Mr. Gentry's lack of criminal conduct since the time of the behavior for which he has already served time, there is no further need for additional punishment. In essence, this case asks the court to tack onto a sentence he previously served for conduct that he admits to, but all occurring during the same time span. Further punishment is unnecessary.

*C. The Need to Afford Adequate Deterrence.*

The proposed sentence provides adequate deterrence. Perhaps obviously, the prior sentence for conduct that occurred simultaneously with his current situation has served to deter Mr. Gentry from further criminal acts. Additional incarceration is simply unnecessary for addressing this sentencing factor.

Mr. Gentry is remorseful, he is reflective, and he is driven to continue reflecting on any corrupt thinking or reinforcing behavior that could have been the cause of his over-a-decade old conduct from literally his youthful time in life.

*D. The Need to Protect the Public.*

Mr. Gentry is safe to function in society, and the public is safe. His ongoing responsiveness to his sex offender registration requirements shows his commitment to law abiding behavior. His lack of further criminal accusation, a decade's worth, shows the commitment as well. Perhaps most crucial to this area is a psychological assessment that was conducted for the very purpose of assessing Mr. Gentry. Dr. Michael Stanfill has engaged



HESTER LAW GROUP, INC., P.S.
1008 SOUTH YAKIMA AVENUE, SUITE 302
TACOMA, WASHINGTON 98405
(253) 272-2157

Mr. Gentry in testing and the clinical interviewing process and, as seen in the accompanying exhibit, Mr. Gentry tests to as safe of a degree as is possible, particularly given the prior conviction. *See*, *Exhibit 2*.

*E. The Need to Provide the Defendant with Education or Vocational Training or Rehabilitation.*

Supervised release time and conditions will satisfy the Court's sentencing objectives and ought to be the focus of Mr. Gentry's sentencing. Mr. Gentry is a man of compliance. Whatever conditions attach to his supervised release time will undeniably be met – thoroughly and promptly. His history is proof.

Mr. Gentry was progressing well in a rebuilt life during the years following his previous confinement. He worked hard to rebuild his life, including advancing through his employment, attaining an associates degree and with the support of family and his fiancé, redeveloping pro-social networks of supporters along the way. Because his job came to an end upon his arrest and initial incarceration, he's going to have to begin again. The Court has an exceptional opportunity in this aspect, as Mr. Gentry will be highly accountable to opportunities Probation will have for him during supervised release.

*F. The Need to Avoid Disproportionality Among Defendants with Similar Records who have been Found Guilty of Similar Conduct.*

The court indeed has a unique situation before it as to this issue. Despite Mr. Gentry's criminal history score, this case should not be contemplated as a subsequent offense to his prior conviction, as the conduct was contemporaneous with the conduct for which he has already served time. The most unique feature of Mr. Gentry's case is that the disclosures leading to his prosecution came nearly a decade after the same accusers were originally interviewed. Certainly, the defense is aware of other cases of delayed disclosure leading to



HESTER LAW GROUP, INC., P.S.
1008 SOUTH YAKIMA AVENUE, SUITE 302
TACOMA, WASHINGTON 98405
(253) 272-2157

prosecution, but this one is obviously different. It is unique for the fact of delayed disclosure, for the fact that there were prior interviews without evidence disclosed, and that a military court previously governed the crimes. Mr. Gentry has had a chance at rebuilding his life and has done so admirably. He was previously young – in his early twenties but is now in his later thirties.

*G. The Need to Make Restitution to Victims.*

Mr. Gentry understands the victims will be seeking restitution for the expenses they have incurred as participants in the prosecution and for counseling.

**Additional Considerations for the Court**

While Mr. Gentry is hopeful the court will endorse his sentencing recommendation, should the court find some length of incarceration appropriate, he asks the Court recommend his sentence be served close to his home in California, the most geographically convenient being FCI Terminal Island.

The defense submits a period of supervised release is appropriate for verifying Mr. Gentry to be safe, through therapeutic education, and for assistance with education and employment. It recommends 3 years of supervised release.

**CONCLUSION**

Respectfully, the defense urges that upon this Court's consideration, under the Guidelines and of the § 3553 factors, a sentence without further incarceration and a period of supervised release would be appropriate. While fashioning the proper sentence, the Court is asked to weigh heavily Mr. Gentry's proven commitment to betterment and avoiding deviant and criminal conduct. Throughout the process of contemplating and fashioning a sentence for Mr. Gentry, the Court is asked to consider the youthfulness of Mr. Gentry during the years of



HESTER LAW GROUP, INC., P.S.
1008 SOUTH YAKIMA AVENUE, SUITE 302
TACOMA, WASHINGTON 98405
(253) 272-2157

the conduct for which he is being sentenced, along with the weight of responsibility he carried at that time, the role alcohol in his corrupt thinking, the impact of combat and fighting for out country and alcohol's role is the misery of thereafter.

The defense respectfully submits that the time Mr. Gentry has already served is sufficient, but not more than necessary to achieve all the goals of sentencing.

RESPECTFULLY SUBMITTED this 19th Day of September, 2025.

HESTER LAW GROUP, INC., P.S.
Attorney for Jonathan Gentry

By: */s/ Lance M. Hester*
Lance M. Hester
WSB #27813



HESTER LAW GROUP, INC., P.S.
1008 SOUTH YAKIMA AVENUE, SUITE 302
TACOMA, WASHINGTON 98405
(253) 272-2157

CERTIFICATE OF SERVICE

Kristine Triboulet, hereby certifies under penalty of perjury under the laws of the State of Washington, that on the date set forth below, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorneys of record for the plaintiff and co-defendants, if any, and hereby certify that I have mailed the document by U.S. Postal Service to Jonathan Gentry, Defendant.

Signed at Tacoma, Washington this 19th Day of September, 2025.

_/s/_ *Kristine Triboulet*______



HESTER LAW GROUP, INC., P.S.
1008 SOUTH YAKIMA AVENUE, SUITE 302
TACOMA, WASHINGTON 98405
(253) 272-2157